# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 05 CR 501 |
| v. ) | Judge Blanche M. Manning |
| ) | |
| RONY MIKHAIL and ANTHONY SPITZ, ) | |
| ) | |

## MEMORANDUM AND ORDER

The defendants are charged with mail fraud for their alleged role in a scheme to bill insurance companies for staged accidents and unnecessary medical procedures. Two of the defendants, Rony Mikhail and Anthony Spitz, have filed numerous pre-trial motions, which the court discusses after a brief summary of the allegations in the indictment.

## BACKGROUND

Defendant Anthony Spitz is a podiatrist. According to the indictment, Spitz's participation in the insurance scheme involved a number of accidents—some real and some staged—that began on June 5, 1997, and culminated with a final staged accident on January 26, 2000. During that period of time, Spitz and another defendant, medical doctor Morton Miller, allegedly processed fraudulent medical records for the "victims" of 21 accidents. For 18 of the 21 accidents, Spitz and Miller allegedly believed they were scheming in cahoots with a corrupt attorney, James L. Kent. However, Kent was an undercover FBI agent who was investigating Spitz and Miller. During the other three accidents, Spitz and Miller worked with defendant Rony Mikhail, who allegedly staged those three accidents. Mikhail and Kent never worked together.

On June 2, 2005, a grand jury indicted Spitz, Miller and Mikhail on five counts of mail fraud, all stemming from documents they allegedly mailed in June and August, 2000, in order to receive insurance proceeds for the January 26, 2000, "accident."

**ANALYSIS**

*Motions to Strike Portions of the Indictment [60-1] & [70-1]*

Spitz and Mikhail argue that those portions of the indictment that refer to Kent should be stricken as surplusage under Federal Rule of Criminal Procedure 7(d) because: (1) the conduct involving Kent occurred more than five years ago, the applicable statute of limitations period for mail fraud, *see* 18 U.S.C. § 3282(a); and (2) evidence of Spitz and Miller's interactions with Kent would be highly prejudicial to Mikhail, who never worked with Kent. They also ask that each instance of the word "staged" be stricken from the indictment because other allegations support the opposite conclusion—the conclusion that Spitz was unaware that accidents had been staged.

The defendants have been charged only with conduct that occurred June 2, 2000, or later, within the applicable five-year limitations period. However, that does not render conduct that occurred earlier irrelevant. Even conduct that is time-barred is relevant to show the existence of a scheme. *See Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 496-97 (7th Cir. 2006) ("There is a distinction between acts that are prosecuted and acts that would be barred by the statute of limitations but are admissible to show that an act being prosecuted actually occurred.") An element of mail fraud is a "scheme or artifice to defraud," *see* 18 U.S.C. § 1341, and therefore evidence of the conduct that comprised that scheme is relevant, even if the conduct itself cannot be prosecuted because it is time-barred. *See United States v. Pharis*, 298 F.3d 228,

233 (3d Cir. 2002) (evidence of time-barred conduct was relevant because a "fraudulent scheme can span many years with the mailings occurring only at the end of the period.")

The question then becomes were Spitz and Miller's interactions with Kent part of the scheme that culminated with the June and August mailings? For Spitz the answer is yes. The fact that Spitz's method changed over time—that he worked with Kent on some occasions and with Mikhail on others—does not establish that there were multiple, distinct schemes. *Id.* ("By itself, changing the method used to commit a fraud does not inaugurate a new fraudulent scheme.") Therefore, Spitz's scheme spans the entire period of time recounted in the indictment, and his motion to strike from the indictment his interactions with Kent is denied.

In contrast, Mikhail's scheme was much more limited. Unlike Spitz and Miller, the indictment contains no allegation that Mikhail ever interacted with Kent, or that Mikhail was involved in any of the conduct that included Kent. Because Mikhail played no part in the interactions between Spitz, Miller, and Kent, evidence of those interactions have no bearing on what role Mikhail played. Therefore, the allegations about Kent (paragraphs 1(c) and paragraphs 7 - 34 of the indictment) are stricken from the indictment as against Mikhail. Mikhail has made no arguments about joinder or severance, and so the court will not address those issues.

Additionally, Spitz and Mikhail have requested that the word "staged" be stricken from the indictment. According to the indictment, on one occasion Kent warned Spitz that one "victim" had a pre-existing injury that was not the result of the claimed accident. According to the defendants, this allegation demonstrates that Spitz was unaware that the accident had been staged because, if he knew it had been staged, Kent would not have distinguished between the victims' phony and actual, preexisting injuries.

The defendants' focus is misplaced. The issue is not whether Spitz knew the accidents were staged because a schemer is liable not only for known but also reasonably foreseeable acts intended to advance the scheme. *See United States v. Gramer*, 309 F.3d 972, 975-76 (7th Cir. 2002) (schemer is liable for both known and reasonably foreseeable conduct of others participating in the fraud). Rather, the only basis under Rule 7(d) to strike the word "staged" as surplusage would be that allegations that the accident were staged "are not relevant to the charge and are inflammatory and prejudicial," an exacting standard. *United States v. Peters*, 435 F. Supp. 746, 753 (7th Cir. 2006) (internal quotations and citations omitted). Under that standard, "staged" should not be stricken. While the defendants are correct that the government can prove that they schemed to submit fraudulent medical claims without also proving that the scheme included staging accidents, the government is nevertheless entitled to prove its case by whatever theory it can. Allegations that the accidents were staged are relevant to the government's theory and therefore will not be stricken.

In summary, the defendants' motions to strike portions of the indictment are granted in part and denied in part as follows: paragraphs 1(c) and 7 - 34 of the indictment are stricken as to defendant Mikhail, while the remainder of the indictment shall stand.

*Motion for Notice of Intention to Use 404(b) Evidence [56-1] & [61-1]*

Spitz and Mikhail seek notice of the government's intention to use other crimes, wrongs, or acts evidence. Federal Rule of Evidence 404(b) prohibits the use of evidence of other crimes, wrong or acts to prove character, although it can be used for other relevant reasons such as proof of motive, opportunity, preparation, or identity. *United States v. Smith*, 103 F.3d 600, 602 (7th

Cir. 1996). However, before using 404(b) evidence, the government must first provide the defendant with reasonable advance notice. Fed. R. Evid. 404(b).

The government has acknowledged its responsibility under Fed. R. Evid. 404(b) and it appears the parties differ only on the date by which the government should make its disclosure. The government commits to disclosing the information, along with "intricately related" evidence ten days before trial, while Mikhail wants it immediately while Spitz would settle for the disclosures 45 days before trial. The rule requires only reasonable, not immediate, notice. Fed. R. Evid. 404(b). In its discretion, the court believes that notice 28 days before trial will afford the defendants adequate time to prepare for the government's use of Rule 404(b) evidence. Accordingly, the defendants' motions are granted, but the government shall provide the required notice no later than 28 days before trial rather than immediately.

*Motions for Production of Favorable Evidence [49-1] & [66-1]*

Spitz and Luce have moved for immediate disclosure of all favorable evidence including any exculpatory and impeaching information. In response, the government has acknowledged its continuing obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), to disclose information that may be exculpatory or impeaching and has committed to producing that evidence. Based upon the government's commitment to fully discharge its obligations under *Brady*/*Giglio* and produce the documents to which the defendants are entitled, their motions are denied as moot. *See United States v. Alex*, 791 F. Supp. 723, 729 (N.D. Ill. 1992) ("the government's promise to comply with the dictates of *Brady* renders [the defendant's] motion moot").

As far as the information Spitz requests beyond what is required under *Brady* and *Giglio*, such as requests for *any* documents which "arguably could reveal" pertinent information, such requests are overly broad. The government is under no obligation to produce such information. *United States v. Balogun*, 971 F. Supp. 1215, 1236 (N.D. Ill. 1997) (a defendant "is not entitled to know all the evidence the government intends to produce") (internal quotation and citation omitted).

*Motions for Preservation and Production of Law Enforcement Notes [50-1] & [62-1]*

Spitz and Mikhail have moved for the preservation of notes prepared by investigators in the course of interviewing prospective witnesses. The government agrees that investigators' notes should be preserved, and therefore these portions of the defendants' motions are denied as moot.

Spitz also seeks an order requiring the government to produce copies of those notes of investigators' interviews. Normally, when agents have incorporated their notes into an official report, known as a Form 302, a defendant is not entitled to production of the original notes. *See United States v. Muhammad*, 120 F.3d 688, 699 (7th Cir. 1997). But the 302 reports prepared in this case were completed in English based upon interviews conducted in Spanish, and Spitz is concerned that critical information may have been lost in translation. Spitz also fears that the 302 reports are inaccurate because weeks—sometimes months—passed between the time agents conducted their interviews and prepared their summaries. Finally, Spitz worries that witnesses will rely more on the 302 reports than their own memories when called to testify about events, some of which occurred as long ago as 1997.

Spitz has offered only generalized speculation that the Form 302 reports *might* be inaccurate. Before the court embarks upon any comparison between investigators' notes and their summaries, or the more onerous task of determining whether Spanish translations are accurate, Spitz must make a colorable claim that the summaries are inaccurate. In that event, the government has offered to produce agents' notes for *in camera* review, the usual means of insuring that the summaries are accurate. *See United States v. Warner*, No. 02 CR 506, 2004 WL 1794476, at *32 (N.D. Ill. Aug. 11, 2004) (ordering *in camera* inspection to determine accuracy of Form 302 summaries). Given the government's offer, the portion of Spitz's motions requesting production of the notes is also denied as moot.

*Motion for* Santiago *Proffer [57-1] & [67-1]*

Spitz and Mikhail request an order that the government make a *Santiago* proffer before trial. The government has agreed to do so 14 days before trial. The court agrees that 14 days will provide the defendants with adequate notice, and therefore their motions are denied as moot.

*Motion to Produce Expert Testimony [63-1]*

The government has agreed to fulfill its obligations under Federal Rule of Criminal Procedure 16(a)(1)(G) to produce a summary of expert testimony it intends to use at trial. Accordingly, Spitz's motion to produce expert testimony is denied as moot.

*Motion to Identify Confidential Informants [64-1]*

Spitz asks the court to order the government to identify its confidential informants. Spitz concedes that he already knows the identity of some, but not necessarily all, of the confidential informants. Spitz also wants to know when the confidential informants became cooperating witnesses.

The confidential informant privilege permits the government to protect an informant's identity and communications that may tend to reveal his identity. *See United States v. Banks*, 405 F.3d 559, 564 (7th Cir. 2005). To overcome the privilege, a defendant bears the burden to establish "a genuine need that outweighs the public interest." *United States v. Valles*, 41 F.3d 355, 358 (7th Cir. 1994).

Spitz argues only generally that additional information about the government's confidential informants would be "relevant and helpful" and "essential to a fair adjudication of the case." He has made no attempt to specifically explain why the requested additional information is "essential" or how it would be "helpful." The burden falls on Spitz to show why the confidential informant privilege should be set aside. *See id.* Spitz has made no attempt at this stage to meet that burden, and therefore his motion is denied without prejudice.

*Motion for Pretrial List of Witnesses [53-1]*

Mikhail moves the court to order the government to disclose its witnesses before trial. Although the government is not required to do so, *see United States v. Cruz-Velasco*, 224 F.3d 654, 665 (7th Cir. 2000), it has agreed to a joint exchange of witness lists 7 days before trial. Accordingly, Mikhail's motion is denied as moot.

*Motion for Grand Jury Proceedings [51-1]*

Mikhail moves for the government's production of his own grand jury testimony. But, according to the government, Mikhail did not testify before the grand jury. Accordingly, there is no testimony to order produced and Mikhail's motion is denied.

*Motions for Early Return of Subpoenas [52-1] & [65-1]*

The defendants' motions for the early return of trial subpoenas are granted.

## CONCLUSION

Accordingly, the court denies as moot motions [49-1], [50-1], [53-1], [57-1], [62-1], [63-1], [66-1], and [67-1]. The court grants motions [56-1] and [61-1] except that the government is ordered to make its Rule 404(b) disclosures no later than 28 days before trial rather than immediately. The court denies motion [51-1] with prejudice and denies motion [64-1] without prejudice. The court grants in part and denies in part motions [60-1] and [70-1] as follows: paragraphs 1(c) and 7 - 34 of the indictment are stricken as to defendant Mikhail; the remainder of the indictment shall stand. The clerk is directed to terminate motion [55-1], a duplicate of motion [51-1]. The parties shall report for a status hearing on April 24, 2007, at 11:00 a.m. Trial remains scheduled for May 14, 2007, at 10:30 a.m.

ENTER:

DATE: December 27, 2006

Blanche M. Manning
United States District Judge